IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02574-MSK-CBS

WILLIAM MARTIN; and
SHELLEY MARTIN,

        Plaintiffs,

v.

TIM HENDERSON, and
STAN HILKEY, as Sheriff of Mesa County

        Defendants.

_____

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5) **(# 67)**, the Plaintiffs' response **(# 77)**, and the Defendants' reply **(# 80)**; the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **(# 68)**, the Plaintiffs' response **(# 77)**, and the Defendants' reply **(# 80)**; and Defendant Hilkey's Motion to Dismiss Official Capacity Claims **(# 69)**, the Plaintiffs' response **(# 76)**, and Mr. Hilkey's reply **(# 79)**.

## FACTS

The Amended Complaint[1] **(# 66)** in this action consists almost entirely of conclusions, rather than specific factual assertions. The following recitation comprises all of the specific, non-conclusory factual assertions therein.

At some time prior to November 15, 2007, Defendant Henderson, an investigator with the Mesa County Sheriff's Department, came to the conclusion that Plaintiff William Martin, a person formerly convicted of a felony, was in possession of firearms in violation of C.R.S. § 18-12-108(1). Mr. Henderson sought a warrant to search the Martins' home and a judge issued a "no-knock" warrant. The Plaintiffs contend that Mr. Henderson "acted with reckless disregard for the truth in the procuring of the warrant by stating that [Mr.] Martin was violating the law by possessing weapons," but they do not specifically identify any particular facts that would support the conclusion that Mr. Henderson's statements evidenced "reckless disregard."[2]

Unidentified individuals executed the warrant on November 15, 2007. The Amended Complaint states only that "during the search, members of the [Mesa County] Sheriffs' Department and ATF held the Martins at gunpoint for nearly eight hours as they rummaged through the home," that the Martins "were forced to stand out in the freezing cold for nearly an

---

[1]The initial Complaint **(# 1)** named 19 individuals and the Mesa County Sheriff's Department as Defendants. As the caption of this Opinion reflects, the Amended Complaint names only Mr. Henderson and Mr. Hilkey as Defendants. The Court assumes that, via the Amended Complaint, the Plaintiffs have abandoned any claims they previously asserted against anyone other than Mr. Henderson and Mr. Hilkey.

[2]The Plaintiffs contend that Mr. Martin's "rights to own and possess the firearms had been restored once he completed his sentence." The mechanism by which this restoration took place is not identified in the Amended Complaint, nor does the Amended Complaint specifically contend that Mr. Henderson knew of the circumstances giving rise to such restoration.

hour without any legal justification," that "one of the officers threatened to shoot the family pet in front of" the Martins, and that unspecified persons seized "a valuable collection of more than one hundred firearms" from the residence.

Without reference to any particular date or circumstance, the Martins contend that, eventually, it was "made clear to Defendants that [Mr.] Martin's constitutional rights to possess the firearms had been restored . . . and that Plaintiffs would not be criminally charged or prosecuted." Nevertheless, they contend, "Defendants refused to return the firearms to them."

The Amended Complaint nominally asserts a single, omnibus claim for relief comprising a number of substantive claims.[3] The Court understands the Amended Complaint to seek relief under 42 U.S.C. § 1983, in that the Defendants violated: (i) the Martins' right to bear arms as guaranteed by the 2d Amendment to the United States Constitution; (ii) the Martins' Fourth Amendment right to be free from unreasonable searches and seizures; (iii) the Martins' Fifth Amendment rights to be free from the deprivation of their property (the firearms) without due process of law; and (iv) the Martins' Eighth Amendment[4] right to be free from cruel and unusual punishment, relating to the fact that they had to stand outside in cold weather for approximately an hour during the search.

The Defendants have filed several motions. First, they move to dismiss **(# 67)** the claims

---

[3] The Amended Complaint purports to assert claims under both *Bivens* and 42 U.S.C. § 1983, however only the latter would provide a colorable basis for the claims asserted because neither of the Defendants are alleged to be federal actors subject to liability in a *Bivens* action..

[4] Because the Martins' alleged detention during the search was not incident to an actual conviction, their right to be free from cruel and inhuman treatment arises under the 14th Amendment's due process clause, as the 8th Amendment applies only to convicted persons. *Thomas v. Guffey*, 367 Fed.Appx. 957, 959 n. 2 (10th Cir. 2010) (unpublished). Nevertheless, the distinction is immaterial for purposes of the analysis herein.

against them due to insufficient service of process under Fed. R. Civ. P. 12(b)(5). The essence of this motion seems to be a contention by the Defendants that the Martins made false representations to the Magistrate Judge about their prior efforts to effect service, thereby misleading the Magistrate Judge into granting an Order **(# 12)** giving them additional time to effect service of process. As best the Court can determine, the Defendants' motion appears to request two, sequential forms of relief: first, the Defendants appear to request that this Court reconsider the Magistrate Judge's Order, on the grounds that (the Defendants contend) it was not supported by a showing by the Martins of good cause for such an extension; and second, once the extension of time to serve has been denied, that the Court dismiss the claims against the Defendants for failure to effect service within the 120-day period of Fed. R. Civ. P. 4(m).

The Defendants also move to dismiss **(# 68)** the claims against them for failure to state a claim under Fed. R. Civ. P. 12(b)(6). They contend that none of the Martins' constitutional claims state a cognizable claim for relief for various reasons.

Finally, Mr. Hilkey separately moves to dismiss **(# 69)** the claims that are asserted against him in his official capacity as Sheriff of Mesa County, arguing that the Amended Complaint fails to allege facts sufficient to give rise to *Monell* liability.

## ANALYSIS

### A. 12(b)(5) Motion

The Court declines to extensively address the Defendants' motion pursuant to Rule 12(b)(5). The record establishes that on March 23, 2010, the Magistrate Judge granted **(# 12)** the Martins' request for an extension of time to effect service through March 31, 2010, and that the Martins served both Mr. Henderson **(# 18)** and Mr. Hilkey **(# 19)** within that deadline.

The Defendants do not offer any particular explanation of the mechanism that gives this Court the authority to review the Magistrate Judge's March 23, 2010 Order. Fed. R. Civ. P. 72(a) permits a District Court to review non-dispositive orders issued by the Magistrate Judge, but only upon a party filing specific written objections to that order within 14 days of being served with a copy. No such timely objection was filed here.[5] The record clearly reflects that the Defendants were served within the deadline set by the Magistrate Judge for service to be completed. Accordingly, the Defendants' Rule 12(b)(5) motion is denied.

### B. Rule 12(b)(6) motions

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v.*

---

[5] The Defendants' counsel entered an appearance on April 9, 2010 (**# 38**) within the 14 day time period after the Magistrate Judge's order granting the Martins additional time to serve. Thus, the Defendants could have timely challenged the Magistrate Judge's order under Rule 72(a), or sought an extension to time to do so. The Defendants' first Motion to Dismiss pursuant to 12(b)(5), filed on April 30, 2010 (#**41**) was thus untimely.

*Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis. A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. The cases make clear that it is <u>facts</u>, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id.* at 1949-50. Moreover, the facts pled must demonstrate a claim that is more than just an abstract "possibility" that the defendant has engaged in actionable misconduct. *Id.* One way in which the Court might conduct its analysis is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

Consistent with the instructions of *Iqbal*, this Court has extracted those well-pled factual assertions from the Amended Complaint and set them forth above; all of the remaining assertions in the Amended Complaint are either outright legal conclusions or "legal conclusions couched as a factual allegation." As a result, the Court conducts its Rule 12(b)(6) analysis based solely on the facts listed above.

For purposes of efficiency, the Court turns first to whether those facts adequately state a

claim under 42 U.S.C. § 1983 for violation of the Martins' 4th Amendment rights. The Court construes the facts alleged by the Martins to assert two distinct forms of 4th Amendment violations: (i) Mr. Henderson made false or misleading statements in his affidavit order to obtain the warrant; and (ii) he duration of the search (8 hours) or the manner in which it was conducted (requiring the Martins to stand outside in the cold for nearly an hour) made the search itself unreasonable.

Turning to the first portion of the claim – that the warrant application made by Mr. Henderson was misleading – the Court observes that a law enforcement official who offers an affidavit in support of a warrant, knowing that the affidavit fails to establish probable cause, may be liable under § 1983 (notwithstanding a judge's intervening act of reiviewing the affidavit for sufficiency and granting the warrant). *Mink v. Knox*, 613 F.3d 995, 1002-03 (10th Cir. 2010); *Poolaw v. Marcantel*, 565 F.3d 721, 733-34 (10th Cir. 2009). Thus, the Martins must allege facts showing that Mr. Henderson knew or should have known that the warrant affidavit he presented would, if approved, result in the issuance and execution of a warrant that was not founded on probable cause. *Id.*

Mr. Henderson's affidavit[6] recites, among other things, a contact with Mr. Martin in May 2007 during which Mr. Martin displayed an extensive firearm collection at his business and Mr. Henderson's discovery that Mr. Martin was convicted of felony vehicular assault in 1991. The

---

[6] Although the Amended Complaint does not attach a copy of the affidavit sworn by Mr. Henderson, the Defendants have attached a copy to their motion. The affidavit is a document that is specifically referred to in the Amended Complaint, and the Plaintiffs have not disputed the authenticity of the copy supplied by the Defendants. Accordingly, the Court may properly consider the contents of the affidavit in ruling on the motion to dismiss. *Jacobsen*, 287 F.3d at 941.

affidavit then states "Based on the fact that Bill Martin is a convicted felon, it is illegal for him to possess weapons per C.R.S. § 18-12-108(1)." The Plaintiffs appear to assert that the statement that C.R.S. § 18-12-108(1) makes it "illegal for him to possess weapons" is false or misleading. As best the Court can determine, this is the only assertion in the affidavit that the Martins contend was misleading.

Mr. Henderson has invoked the doctrine of qualified immunity with regard to the claims asserted against him. The doctrine of qualified immunity protects government officials from liability for civil damages if their alleged conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known at the time of the conduct. *Pearson v. Callahan*, 129 S.ct. 808, 815 (2009). For the law to be "clearly established," there ordinarily must be controlling precedent acknowledging the existence of the constitutional right in the particular circumstances presented, or the "established weight of authority" from other courts must recognize the legal right at issue. *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010). It is not necessary for the precise factual scenario to be presented in a prior case, so long as the constitutional rule identified in the decisional law "appl[ies] with obvious clarity." *Id.* The Martins bear the burden of identifying the precedent that clearly establishes the particular constitutional rights they assert. *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).

For the Martins to overcome Mr. Henderson's claim of qualified immunity, they must show that, at the time of Mr. Henderson's conduct, binding or authoritative precedent would have made clear to Mr. Henderson that his contention that Mr. Martin was prohibited from possessing firearms under C.R.S. § 18-12-108(1) was incorrect. Put differently, unless Colorado law at the time clearly established that Mr. Martin was entitled to possess the firearms, the Court

cannot say that Mr. Henderson's assertion that Mr. Martin's possession was illegal permits a claim for damages against Mr. Henderson for making that assertion.[7]  *See e.g. Mueller v. Tinkham,* 162 F.3d 999, 1003 (8th Cir. 1998) ("For purposes of qualified immunity, the issue is not whether the affidavit actually establishes probable cause, but rather whether the officer had an objectively reasonable belief that it established probable cause").

This Court will not endeavor to lay out the extensive lines of argument that each party has put forward to justify their position regarding the correctness of Mr. Henderson's conclusion that Mr. Martin's possessing of the firearms violated C.R.S. § 18-12-108(1).[8]  It is sufficient to note that, as best this Court can determine, no Colorado law in existence in 2007 would have

---

[7] An entirely different line of reasoning that nevertheless reaches the same conclusion is to observe that cases such as *Mink* and *Poolaw* require that, to be liable, Mr. Henderson must either have known or should have known that his affidavit did not actually demonstrate probable cause for Mr. Martin's arrest. If the extant law clearly demonstrated that Mr. Martin could not be guilty of illegally possessing the weapons, Mr. Henderson should have known that an affidavit attesting to the contrary might yield a defective warrant. But if the law governing Mr. Martin's possession was unsettled or unclear, Mr. Henderson would not necessarily have known that an affidavit asserting such possession to be illegal would have failed to establish probable cause for a search and seizure.

[8] Summarized, it appears to be undisputed that, under Colorado's Constitution, persons convicted of a crime regain their civil rights (including, presumably, the right to possess firearms) automatically upon their release from prison. However, where Colorado statutory law prohibits a felon from possessing weapons, the statute operates to prevent the restoration of that particular civil right. *People v. Blue*, 544 P.2d 385, 390-91 (Colo. 1975).

At the time of Mr. Martin's release from prison, a predecessor version of C.R.S. § 18-12-108 prohibited persons convicted of felonies involving "the use of force or violence" from possessing firearms for a period of 10 years after their release from custody. Neither party has produced Colorado law that clearly establishes whether the crime of "vehicular assault" – the crime Mr. Martin was convicted of – was considered under that statute to be a crime involving "the use of force or violence."

The predecessor version was amended in 1994 to its current form, which now applies to all felons and is not limited as to the duration of the prohibition. Mr. Henderson contends that if Mr. Martin was subject to a statutory restraint on his ability to possess firearms at the time of that amendment, the broadened version of the statute continues to apply to him to the present.

9


clearly established that persons in Mr. Martin's situation were not subject to the restriction contained in C.R.S. § 18-12-108(1). Put more concretely, at the time he was drafting his affidavit, Mr. Henderson could have diligently searched for legal precedent to answer the question "is Mr. Martin exempt from what would otherwise appear to be the application of C.R.S. § 18-12-108(1)?" and not found a line of authority stating that he was. The Court cannot say that, in swearing out his affidavit, Mr. Henderson should have known that the allegations he was making would clearly constitute a deprivation of Mr. Martin's constitutional rights. Thus, Mr. Henderson is entitled to qualified immunity from claims relating to his seeking of the warrant.

The Martins' remaining 4th Amendment claim contends that the manner in which the warrant was executed was itself unreasonable – *e.g.* that the execution of the warrant took an unreasonably long time, or that those executing the warrant engaged in needlessly dangerous behavior towards the Martins and their pets. The Court need not address the elements that must be alleged to support such a claim because the Court finds that the Amended Complaint contains no allegation that specifically identifies either Mr. Henderson or Mr. Hilkey as the persons who were responsible for any of the claimed acts.

A claim under § 1983 must allege facts sufficient to demonstrate each Defendant's personal participation in the unconstitutional conduct, and generic references to "Defendants" engaging in such acts without identifying the particular person allegedly responsible is insufficient to state a claim. *Bridges v. Lane*, 351 Fed.Appx. 284, 287 (10th Cir. 2009) (unpublished) (in § 1983 claims "it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as

to the basis of the claims against him or her"); *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of [ ] the collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed").  Because the Amended Complaint fails to indicate to what extent, if any, Mr. Henderson and Mr. Hilkey were actually involved in the execution of the warrant, any claim against them premised upon unreasonableness in such execution fails to state a claim.

The same reasoning compels dismissal of the Martins' 2nd, 5th and 8th Amendment claims against Mr. Henderson and Mr. Hilkey.  Without specific allegations identifying Mr. Henderson or Mr. Hilkey as the person(s) who actually prevented the return of the firearms or the person(s) who made the Martins wait outside during the search, the Martins' generic contention that "Defendants" are responsible for this conduct fails to state a claim. *Id.*

Accordingly, the Court finds that Mr. Henderson and Mr. Hilkey are entitled to dismissal of all claims asserted against them as individuals.

Dismissal of the official capacity claims asserted against Mr. Hilkey as Sheriff of Mesa County is also warranted.  To assert official capacity claims under *Monell*, the Martins must allege facts sufficient to demonstrate two elements: (i) that an employee of the Sheriff's Department committed a constitutional violation; and (ii) that a custom or policy of the Sheriff's Department was the moving force behind that deprivation.  *Cordova v. Aragon*, 569 F.3d 1183, 1193-94 (10th Cir. 2009).  With the exception of Mr. Henderson's affidavit, the conclusory assertions in the Amended Complaint fail to identify any Sheriff's Department employee who

committed any constitutional violation,[9] and fail to identify any particular custom or policy of the Sheriff's Department that caused any violation to occur. Accordingly, Mr. Hilkey is entitled to dismissal of the claims asserted against him in his official capacity.

For the foregoing reasons, the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5) **(# 67)** is **DENIED**. The Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **(# 68)** and Defendant Hilkey's Motion to Dismiss Official Capacity Claims **(# 69)** are **GRANTED**. All claims in this action are **DISMISSED**, and the Clerk of the Court is directed to close this case.

Dated this 10th day of March, 2011

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge

---

[9]The Court notes that the Martins allege that the warrant was executed by both Sheriff's Department officers and representatives of the ATF. Thus, the mere fact that some alleged constitutional violation occurred during the execution of the warrant does not permit the assumption that the violation was committed by a Sheriff's Department employee.